UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

VICTORIA ROBERTS,

    Plaintiff,

v.

PARAGON METALS LLC and
FLOYD SMITH,

    Defendants.

---

Mark S. Wilkinson (P68765)
PALADIN EMPLOYMENT LAW PLLC
*Attorney for Plaintiff*
5955 West Main Street
Kalamazoo, MI 49009
(tel.) 269.978.2474
mark@paladinemploymentlaw.com

---

# COMPLAINT

Plaintiff Victoria Roberts alleges the following for her complaint against Defendants Paragon Metals LLC and Floyd Smith.

### NATURE OF THE CASE

1. This is a sex harassment case.

2. Plaintiff Victoria Roberts endured a long campaign of harassment from her supervisor (Defendant Floyd Smith) that included Smith repeatedly grabbing Roberts' crotch, butt, kissing her, groping her, and making all manner of offensive and disgusting comments to her.

3. Roberts complained about the harassment to Defendant Paragon Metals human resources staff on two separate occasions, but Smith's harassment continued on. And, notably, when she complained, Paragon's human resources manager told Roberts the she "was always go-

ing to protect her family"—meaning that the human resources department was going to protect the company and its managers at all costs. Roberts therefore knew that she could not rely on the company for support or to take any steps to end the harassment.

4. She tried to work through it and carry on as best she could, but after more than a year of harassment, abuse, and humiliation, it all proved too much for Roberts and she had no choice but to quit her job. Smith's harassment was practically non-stop and the company had done nothing to stop it, and made clear to Roberts it would not do anything to put its "family" in jeopardy by addressing the harassment.

5. Defendants' conduct violates Title VII of the Civil Rights Act of 1964, Michigan's Elliott-Larsen Civil Rights Act, and gives rise to several causes of action under Michigan's common law.

6. Roberts suffered damages as a result of Defendants' statutory violations and their wrongful conduct that include, but are not limited to, back wages, frontpay, compensatory damages (including emotional distress), attorney's fees, and litigation costs.

## PARTIES, JURISDICTION, AND VENUE

7. Plaintiff Victoria Roberts is an individual person who resides in Branch County, Michigan.

8. Defendant Paragon Metals is a limited liability company organized under the laws of the State of Delaware. The company operates three manufacturing facilities. One of Defendant's manufacturing facilities is located in Branch County and the other two are located in Hillsdale County.

9. Defendant Floyd Smith is an individual person employed by Paragon who works at the company's Quincy plant. Smith resides in Branch County, Michigan.

10. The Court has personal jurisdiction over Defendants under Michigan Compiled Laws Sections 600.701, 600.705, 600.711, and 600.715. Fed. R. Civ. P. 4(k)(1)(A).

11. The Court has original subject matter jurisdiction over the claims asserted in the complaint under Title VII of the Civil Rights Act of 1964 in accordance with Title 28 of the United States Code, Section 1331, because those claims arise under federal law.

12. The Court has supplemental jurisdiction over the state law claims asserted in the complaint in accordance with Title 28 of the United States Code, Section 1367, because those claims are so related to the claims over which the Court has original jurisdiction that they form part of the same case and controversy.

13. Venue is appropriate in this judicial district in accordance with Title 28 of the United States Code, Section 1391(b).

## GENERAL ALLEGATIONS

14. Roberts worked for Paragon as an hourly production employee from 2013 until November 2020. Defendant Paragon Metals produces and sells metal components for use in the automotive, trucking, and heavy equipment industries.

15. From 2013 until 2019, Roberts worked for Paragon as a shipping inspector and a parts inspector. Roberts performed her job well and consistently received praise from Paragon's managers regarding her job performance.

16. In 2019, Roberts transferred into Paragon's quality lab where she became a quality auditor.

17. As a quality auditor, Roberts' job duties included running parts on a critical measuring machine, sorting and recording rejected parts, and overseeing the quality for the operators running computer numeric control machines.

18. When Roberts became a quality auditor, Defendant Floyd Smith became her di-

rect supervisor and Smith otherwise directed and controlled her work and her working environment.

19.     Beginning in 2019 while working under Smith as the supervisor, Smith sexually harassed Roberts. Some of Smith's harassing behavior included, but is not limited to:

- groping and touching Roberts' crotch (at least three times);
- groping and touching Roberts' butt (at least 20 times);
- kissing Roberts on the face (at least two times);
- groping, grabbing, and touching Roberts' hips;
- pressing his body into Roberts' butt and back when behind her;
- touching and rubbing Roberts' hands and arms suggestively (at least 35 times); and
- Putting his hands over Roberts' hands while she typed on her computer keyboard (at least 20 times).

All of Smith's groping, touching, and harassing conduct were unwelcome by Roberts and deeply offensive to her. Roberts repeatedly told smith to stop this type of behavior (and never do anything like it again), but he refused and the harassment continued.

20.     At the same time, Smith would also make offensive comments to Roberts. Some of Smith's harassing comments included, but are not limited to, telling Roberts:

- "I know you want to be with me" (at least 10 times);
- "you wouldn't be able to stand it if we were together" (at least 20 times);
- "you wouldn't be able to stand if it I got you alone" (at least 8 times);
- "your ass looks great in those pants" (almost each time they worked together);
- "I can see your butt in those jeans" (at least 50 times);
- "what I wouldn't do to you if you were mine" (at least 15 times);
- "your shirt covers too much of your butt (at least 10 times);
- "I wish I could get you somewhere alone" (at least two times); and
- "we should meet somewhere," asking Roberts to meet Smith outside of work.

- 4 -

All of Smith's comments and his harassing conduct were unwelcome by Roberts and deeply offensive to her. Roberts repeatedly told smith to stop making these type of comments to her (and not say anything like them again), but he refused and the harassment continued.

21. Roberts complained about Smith's harassment to Paragon's human resource department on at least two occasions.

22. In 2019, Roberts complained about Smith's sexual harassment to Brandi Donovan, who worked for Paragon as a human resources generalist. Roberts handed her work identification badge to Donovan and said: "I'm done. I can't work with Floyd [Smith] anymore. He's a pervert." Roberts then left Paragon's workplace and went home.

23. Katrina Mosher, Paragon's human resources and safety manager, called Roberts at home and convinced Roberts to come in to the plant to talk to Mosher about Smith—which she did.

24. Roberts told Mosher about all the harassing conduct Smith had engaged in (the groping, touching, kissing, petting), as well as all of the offensive and harassing comments he made to her. Mosher assured Roberts that she would talk with Smith and the harassment would end. But Mosher also made a comment to Roberts at their meeting that stuck with her: that she (Mosher) "was always going to protect her family"—meaning that she is going to protect the company and its managers at all costs.

25. After meeting with Mosher, things with Smith got better—for about one week—after which time Smith fell right back into his old routine with Roberts where he felt like he could say and do anything he wanted to her (and he did).

26. Roberts endured several more months of harassment from Smith as the unwanted and offensive groping, touching, kissing, and offensive comments continued with the same type

of frequency as they had before Roberts complained.

27. Roberts then complained again to Mosher a second time about Smith and how he treated her and the things he had said and had done to her. Mosher again told Roberts she would "look into it."

28. However, little to nothing about Smith's behavior changed after Roberts' second complaint. Smith's harassment of Roberts continued on as it had before.

29. Seeing that her complaints did nothing to end Smith's harassment, Roberts knew that no matter what she did and how many times she complained about Smith, Paragon would not protect her from him. Instead, Mosher and the company's human resources department were going to "protect their family" and not Roberts.

30. Smith also had a reputation as a serial sexual harasser of women at Paragon and as a workplace predator, which the company knew about. Several other women at Paragon have been victims of Smith's sexual harassment. However, Paragon never disciplined or punished Smith—or at least the company could not get him to stop sexually harassing female workers.

31. By October 2020, after enduring well over a year of abuse and sexual harassment, Roberts finally cracked. She could not take it any further and she stopped reporting for work. She could not take the harassment from Smith any more, particularly when she knew that Paragon would not do anything to protect her from Smith and would not do anything to jeopardize the "family."

32. Roberts filed a charge of discrimination against Paragon with the United States Equal Employment Opportunity Commission and has otherwise satisfied all administrative prerequisites to filing her causes of action.

## COUNT 1

### SEXUAL HARASSMENT IN VIOLATION OF
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

(*against Paragon only*)

33. Roberts repeats and incorporates all the previous allegations in her complaint. This count in the complaint proceeds against Paragon.

34. Roberts was subjected to communications and conduct based on her sex and gender.

35. The communications and conduct were hostile and unwelcome.

36. Roberts was subjected to a hostile work environment and otherwise treated differently than other employees because of her sex and gender.

37. Paragon was legally responsible for the work environment that was hostile to Roberts because of her sex and gender.

38. The hostile work environment Roberts endured was so severe and pervasive so as to alter the terms and conditions of her employment by creating a hostile and abusive working environment.

39. Paragon knew about the conduct Roberts was subjected to and failed to implement reasonably prompt and appropriate corrective actions to end the harassment.

40. Roberts suffered damages as a result of Defendant's violations of Title VII of the Civil Rights Act of 1964, that include, but are not limited to, back wages, frontpay, compensatory damages (including emotional distress), attorney's fees, and litigation costs.

## COUNT 2

### DISCRIMINATION IN VIOLATION OF
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

(*against Paragon only*)

41. Roberts repeats and incorporates all the previous allegations in her complaint. This count in the complaint proceeds against Paragon.

42. Paragon subjected Roberts to different terms and conditions of employment in comparison to male employees.

43. Paragon constructively discharged and terminated Roberts' employment.

44. Roberts' sex and gender were motivating factors in Paragon's decision to treat her differently in connection with the terms and conditions of her employment and in connection with her constructive discharge.

45. Roberts suffered damages as a result of Paragon's violations of Title VII of the Civil Rights Act of 1964, that include, but are not limited to, back wages, frontpay, compensatory damages (including emotional distress), attorney's fees, and litigation costs.

## COUNT 3
### SEXUAL HARASSMENT IN VIOLATION OF MICHIGAN'S ELLIOTT-LARSEN CIVIL RIGHTS ACT
(*against Paragon and Smith*)

46. Roberts repeats and incorporates all the previous allegations in her complaint. This count in the complaint proceeds against Paragon and Smith.

47. Roberts was subjected to communications and conduct based on her sex and gender.

48. The communications and conduct were hostile and unwelcome.

49. Roberts was subjected to a hostile work environment and otherwise treated differently than other employees because of her sex and gender.

50. Paragon was legally responsible for the work environment that was hostile to Roberts because of her sex and gender.

51. The hostile work environment Roberts endured was so severe and pervasive so as to alter the terms and conditions of her employment by creating a hostile and abusive working environment.

52. Paragon knew about the conduct Roberts was subjected to and failed to imple-

ment reasonably prompt and appropriate corrective actions to end the harassment.

53. Roberts suffered damages as a result of Defendant's violations of Michigan's Elliot-Larsen Civil Rights Act, that include, but are not limited to, back wages, frontpay, compensatory damages (including emotional distress), attorney's fees, and litigation costs.

### COUNT 4
### DISCRIMINATION IN VIOLATION OF MICHIGAN'S ELLIOTT-LARSEN CIVIL RIGHTS ACT
(*against Paragon and Smith*)

54. Roberts repeats and incorporates all the previous allegations in her complaint. This count in the complaint proceeds against Paragon and Smith.

55. Paragon and Smith subjected Roberts to different terms and conditions of employment in comparison to male employees.

56. Paragon constructively discharged and terminated Roberts' employment.

57. Roberts' gender and sex were one of the motives or reasons which made a difference in Paragon's decision to treat her differently in connection with the terms and conditions of her employment and in connection with her constructive discharge.

58. Roberts suffered damages as a result of Paragon's violations of Michigan's Elliott-Larsen Civil Rights Act, that include, but are not limited to, back wages, frontpay, compensatory damages (including emotional distress), attorney's fees, and litigation costs.

### COUNT 5
### ASSAULT
(*against Smith only*)

59. Roberts repeats and incorporates all the previous allegations in her complaint. This count in the complaint proceeds against Smith.

60. Smith made intentional comments about Roberts' body and threats to touch her body

in an offensive manner against her will.

61. Smith's comments and threats were made under circumstances that created a well-founded fear of imminent peril for Roberts.

62. Smith had the apparent and present ability to carry out the threats to touch Roberts' body in an offensive manner against her will.

63. Roberts suffered damages as a result of Smith's assault.

## COUNT 6
### BATTERY
(*against Smith only*)

64. Roberts repeats and incorporates all the previous allegations in her complaint. This count in the complaint proceeds against Smith.

65. Smith willfully and intentionally touched Roberts' body in an offensive manner against her will.

66. Roberts suffered damages as a result of Smith's battery.

## COUNT 7
### NEGLIGENT RETENTION OF EMPLOYMENT
(*against Paragon only*)

67. Roberts repeats and incorporates all the previous allegations in her complaint. This count in the complaint proceeds against Paragon.

68. Paragon owed Roberts a duty of reasonable care to maintain a safe working environment.

69. Paragon breached that duty by retaining Smith's employment after it knew that he had a propensity and likelihood to sexually harass and injure women in Paragon's workplace, such as Roberts.

70. Smith caused harm and injuries to Roberts at Paragon's workplace.

71. Paragon's negligence was the direct and proximate cause of Roberts' injuries.

72. Roberts suffered damages because of Paragon's negligence in retaining Smith's employment that include, but are not limited to, pain and suffering, emotional distress, attorney's fees, and litigation costs.

### JURY DEMAND

73. Roberts demands a trial by jury on all issues so triable. FED. R. CIV. P. 38(b).

### RELIEF REQUESTED

74. Plaintiff Victoria Roberts requests that the Court enter a judgment in her favor and against Defendants Paragon Metals LLC and Floyd Smith in an amount that will fully and fairly compensate her for all of her damages, losses, expenses, back wages, emotional distress, attorney's fees, litigation costs, and interest.

75. Roberts also requests that the court grant her any additional relief, both legal and equitable, as the Court determines to be appropriate and just under the circumstances.

VICTORIA ROBERTS

Dated: January 17, 2022

By:   /s/ Mark S. Wilkinson
Mark S. Wilkinson (P68765)
*Attorney for Plaintiff*
PALADIN EMPLOYMENT LAW PLLC
5955 West Main Street
Kalamazoo, MI 49009
(tel.) 269.978.2474
mark@paladinemploymentlaw.com